```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X           NOT FOR PUBLICATION
IVAN FERNANDO ORTEGA,

                    Plaintiff,                MEMORANDUM AND ORDER

        -against-                              18-CV-5995 (KAM)(RER)

SAMARITAN VILLAGE MYRTLE AVE. MEN'S
SHELTER; DIRECTOR MISS ANA MARIE
JOHNSON, NYC HOMELESS DIVISION
SERVICES; and THE CITY OF NEW YORK,

                    Defendants.
----------------------------------------------------------------X
```

MATSUMOTO, United States District Judge:

  *Pro se* plaintiff Ivan Fernando Ortega filed the above-captioned complaint on October 10, 2018 in the United States District Court for the Southern District of New York. Plaintiff's request to proceed *in forma pauperis* ("IFP") was granted by the S.D.N.Y. The action was transferred to this court on October 26, 2018. For the reasons that follow, the complaint is dismissed, with leave to replead within 30 days as set forth below.

## BACKGROUND

  The complaint consists of hand-written entries in a form complaint and typed addenda. Broadly speaking, plaintiff's grievances are variegated, seemingly disconnected, and conclusory. Plaintiff's allegations include his failure to graduate from college, his being denied his preferred brand of

medication by a state judge, and being "beaten, stolen, thread [sic] of being stubbed [sic] and Killed," and robbed by staff workers at his homeless shelters. (ECF No. 2, Compl. 11-12.) Although the handwriting is difficult to decipher, the court understands plaintiff to be making the following allegations, which are assumed to be true for purposes of this Order.

Plaintiff alleges that, in 2004, he was housed at the Wards Island Shelter for Men, where he "suffered Tissues of Brain after or since he was almost murdered." (Compl. at 6, 14.)[1] Plaintiff alleges that "[t]his Brain Injury and Disability was Diagnostic [sic] around or about August 2010," and references an attached medical report, which was not actually attached to the Complaint. (*Id.* at 14-15.) He also alleges that he was transferred to Skyway Shelter for Men in May 2013 and, in conclusory fashion, alleges that he was "wrongfully, neglected" there. (*Id.* at 15.) At some point, he was receiving a Section 8 voucher, but was evicted from his housing in 2013, because the Human Resources Administration failed to pay his rent and his income was deemed to be too high. (*Id.* at 5, 9, 10.)

Thereafter, he was placed in the Skyway shelter, which has medical facilities that he needs. (*Id.* at 9, 10.) He was

---

[1] The pages of the addenda are not consecutively paginated. In references to the form complaint and attached addenda, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") System.

transferred out of that shelter due to alleged "discrimination," and was moved to the Samaritan Village Shelter. (*Id.* at 5.) He was "almost murdered in Myrtle Ave. Shelter for Men" on September 10, 2017. He suffered injuries to his groin and additional unspecified injuries. (*Id.*) He also has arthritis and hernias in his knee. (*Id.* at 6, 14.) While there, he was subjected to discrimination, prejudice, and threats. (*Id.* at 5-6.) A "DHS Police officer 'sergeant,'" security guards, and Director Anne Marie Johnson failed to protect him or move him to another shelter. (*Id.*) Property and funds were allegedly taken from him. (*Id.* at 5-6, 11.) Plaintiff apparently requests $200,000 of "compensation come from The Office of The New York City Controller" for "long criminal acts" that allegedly occurred in Samaritan Village Shelter, and transfer to Skyway Shelter.

Plaintiff's also references his prior social security case before this court, *Ortega v. Commissioner*, 13-cv-3487. This court dismissed that case, by Memorandum and Order dated October 19, 2015, for lack of subject matter jurisdiction because plaintiff had failed to exhaust his administrative remedies and obtain a final decision by the Commissioner of Social Security as required by 42 U.S.C. § 405(g). Plaintiff claims that he "heard from Mr. Vega clerk of District Court: 'Hon. Matsumoto did not read your paper/documents and dismissed

3

this case.'" (ECF No. 2, Compl. at 8.) He now purportedly brings a "Just Cause of Action Case against Institutions, Agencies, Divisions, Employees, and Agents of The City of New York, Under Claim #2017PI032697," and asserts that he should be getting disability payments because he is "100% total disabled within Several Physical Disabilities Injuries" [sic]. (Id. at 8-12.)

Plaintiff also mentions "Police Brutality" and false arrests, but does not describe any incidents. (Id. at 9.) He further claims he was unconstitutionally "obstructed, blocked of his continuing higher education which conspiracy prevented [him from] graduat[ing] from John Jay College of Criminal Justice." (Id. at 10.) Later in the complaint, however, Ortega admits that he was prevented from graduating from John Jay College of Criminal Justice because he had not paid his balance due to John Jay, and his grades were too low. (Id. at 12.)

Plaintiff also alleges that Medicaid initially approved his prescription for Levitra, which was denied by Health First and CVS Care Mark. (Id. at 11.) Thereafter, plaintiff "made a petition to The New York Supreme Court of Brooklyn" for Levitra, and the Hon. Dawn Jimenez-Salta denied his request for a prescription for Levitra, and he was approved for Cialis instead. (Id. at 11.) Again, plaintiff does not specify what, if any relief, he seeks from the court.

Plaintiff references a complaint with the New York City Comptroller and a demand for $200,000. (*Id.* at 6, 9.) He states that he was offered a settlement, but does not describe any further proceedings. (*Id.*) He attaches a letter sent to the Comptroller's Office, in which he described an assault by Luis Lopez and requested that he be placed at Skyway Shelter. (*Id.* at 14-15.) Plaintiff requests to be transferred to Skyway Shelter and seeks other unspecified relief for violations of his constitutional rights, including "Cruel and Un-Human Treatment, Discrimination . . . Educational Student Acts, taken away of NYCHA Section 8 special program, Human and Civil Rights and Its Amendments under Jurisdiction of The City of New York Administration System." (*Id.* at 9, 13.) He also asserts unspecified violations of the Americans with Disabilities Act ("ADA"). (*Id.*)

On October 30, 2018, plaintiff submitted a letter to this court, enclosing documentation from a personal injury claim he filed with the City of New York. Those documents repeat the allegations contained in the instant complaint. One of these documents is the transcript of a preliminary hearing before the Office of New York City Comptroller, held on February 22, 2018. (ECF Entry No. 7, at 26-78.) At the hearing, plaintiff described an incident that occurred on either August 17, 2017 or

September 16, 2017,[2] when he was attacked by another resident, Luis Lopez, at the Myrtle Avenue Shelter. (*Id.* at 14, 39-41.) Plaintiff stated that after the attack, he called the police, who arrested his attacker. (*Id.* at 51.) The next day, Plaintiff was moved to a different shelter. (*Id.*) Plaintiff stated that he had previously complained of threats to a social worker, an officer from the Department of Homeless Services, and officers from the New York City Police Department. (*Id.* at 43-44.) He gave additional details of his transfers to different homeless shelters and his unmet requests to be returned to the Skyway Shelter. (*Id.* at 53-55.)

Since filing the complaint, plaintiff has filed numerous lengthy submissions and so-called "affidavits of good faith" requesting a "fully favorable decision." (*See generally* ECF Nos. 7-18, 21.) One of plaintiff's submissions, dated November 26, 2019, includes a written decision by the State of New York's Office of Temporary and Disability Assistance, after a hearing that occurred on September 23, 2019 before ALJ Gamble. The ALJ determined that it was error for New York City Department of Homeless Services to fail to act on plaintiff's request to transfer from his current shelter to a single room in a shelter facility, and directed that the agency process his

---

[2] At the hearing, plaintiff stated that he was attacked multiple times; it is not clear which date corresponds to the incident he described.

6

transfer application and advise plaintiff of any additional documentation required to determine his eligibility for a transfer. (ECF No. 19, at 14.) Plaintiff does not advise the court of the outcome of the Department of Homeless Services' determination. On December 4, 2019, plaintiff filed a second *in forma pauperis* application to proceed in this case "without payment of the filing fee." Because plaintiff's IFP application was previously granted by Judge McMahon of the Southern District of New York, this court terminates plaintiff's IFP application as moot.

## DISCUSSION

### A. Standard of Review

The court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on

which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B. Constitutional Claims

Plaintiff alleges that defendants violated his constitutional rights, claims which may be cognizable under 42 U.S.C. § 1983. In order to maintain a § 1983 action, a plaintiff must allege that "the conduct complained of [was] committed by a person acting under color of state law," and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v.*

8

*Callan*, 13 F.3d 545, 547 (2d Cir. 1994). The plaintiff must show that each of the named individuals is personally liable for the alleged harm. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Section 1983 does not extend to harms caused by private individuals or private organizations. As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted). Although the under-color-of-state-law requirement can be applied to private individuals in certain limited circumstances, such as where the private individual is engaged in a "public function" or performs conduct that is "fairly attributable to the state," *Id.*, 526 U.S. at 51, the public function exception is narrow. A private entity does not become a state actor merely by performing under a state contract. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Moreover, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974).

Plaintiff names the Samaritan Village Myrtle Avenue Men's Shelter and its director as defendants. Samaritan Daytop Village is a private organization that provides social services, including housing, drug treatment, and educational and vocational training. *See* https://samaritanvillage.org/about-good (last visited 11/14/18). Access to shelter is not a constitutional right, nor is there any government obligation to provide adequate housing. *Lindsey v. Normet*, 405 U.S. 56, 74 (1972). New York City has chosen to provide homeless services, and city and state agencies regulate housing conditions and facilitate access to housing. New York State, however, gives "broad discretion . . . to local authorities in assigning the homeless to shelters." Further, New York City's "legislative policy choice in no way makes these services the exclusive province of the State. . . . That a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker*, 457 U.S. at 842 (holding that private school did not act under color of state law when it discharged employees, thus employees did not state a claim under 42 U.S.C. § 1983).

"[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Reaves v.*

*Dep't of Veterans Affairs*, No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009), *as corrected* (Jan. 14, 2009). Even if Samaritan Daytop Village contracts with the City of New York to provide housing for the homeless, plaintiff has not shown that this private organization is performing a public function sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability. Because the complaint does not establish that Samaritan Daytop Village and its employees are state actors, plaintiff's claim that his constitutional rights were violated by the organization or its staff members fails to state a claim under Section 1983.[3]

Plaintiff also names the Department of Homeless Services ("DHS") and the City of New York as defendants. The New York City Charter, § 396, provides that suits must be brought against the City of New York and not any agency or subdivision. *See Nnebe v. Daus*, 644 F.3d 147, 158 n.6 (2d Cir. 2011). Thus, plaintiff's suit can proceed against the City, but not DHS. A municipality, however, can be liable under § 1983 only if the plaintiff can show that a municipal policy or custom

---

[3] Plaintiff alleges that he was also assaulted at a shelter on Ward's Island, a shelter that may have been operated by the City of New York. But this incident occurred in 2004, and is well outside the three-year statute of limitations for § 1983 actions in New York State. *See Owens v. Okure*, 488 U.S. 235, 249-51 (1989) (discussing *Wilson v. Garcia*, 471 U.S. 261 (1985), which held that courts deciding claims under § 1983 should "borrow" the state statute of limitations for personal injury actions); N.Y. C.P.L.R. § 214 (McKinney) (the statute of limitations for personal injury actions in New York is three years).

caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Plaintiff has not alleged any unconstitutional policy or practice by the City of New York or any of its agencies. Thus, he also fails to state a claim under Section 1983 against the City of New York and the Department of Homeless Services.

Plaintiff does not name any other individual defendants in the caption of his complaint, but he does allege that a "DHS Police officer 'sergeant,'" failed to protect him, during an incident at Samaritan Daytop Village shelter in September 2017 (Compl. 5), and his October 30, 2018 letter mentions New York City Police Officers and a social worker. Even if plaintiff had named these individuals as defendants, his complaint does not adequately allege any constitutional violation. The Fourteenth Amendment does not require a state to "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989) ("[A]s a general

matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." at 197); *see also Brown v. City of New York*, No. 17-CV-5836 (LDH)(ST), 2018 WL 1770557, at *4 (E.D.N.Y. Apr. 12, 2018) (holding that private homeless shelter did not have a special duty of care and protection toward residents who could voluntarily leave the shelter). Moreover, police officers are responsible for acting for the benefit of the public, not for individual citizens, who are not legally entitled to particular outcomes. *See Castle Rock v. Gonzales*, 545 U.S. 748, 765 (2005).

Even if the individual police officers and social worker had been named as defendants, plaintiff has not and generally cannot state a claim for failure to protect from private harm, and plaintiff has not alleged that these unnamed individuals violated any other constitutional rights. Although plaintiff was unhappy with his placement in various homeless shelters, he does not have a constitutional right to a particular housing assignment. *See Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512-514 (S.D.N.Y. 2009) (finding homeless citizen who sought placement in general shelter population because he disavowed his mental health diagnosis failed to state a due process claim because a homeless person does not have a liberty or property right to placement in

a particular type of shelter). Therefore, plaintiff has failed to state a claim against the City of New York and the Department of Homeless Services.

### C. Other Federal Claims

Plaintiff also asserts claims under the ADA. The Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*, proscribes discrimination in "places of public accommodation," which are defined in 42 U.S.C. § 12181(7) as facilities owned by private entities affecting commerce.[1] Private, residential complexes, even if the premises are used for publicly-subsidized housing, are not generally considered to be "places of public accommodation." *See Reid v. Zackenbaum*, No. 05-CV-1569 FB, 2005 WL 1993394, at *4 (E.D.N.Y. Aug. 17, 2005) ("A residential facility, such as an apartment, is not a public accommodation under the ADA."); *Bobrowsky v. Curran*, 333 F. Supp. 2d 159, 163 (S.D.N.Y. 2004) ("There is no question that the property at issue in the case at bar (a) is privately owned, (b) does not affect commerce, and (c) does not fall into any of the categories set forth in § 12182."); *See also Schiavo ex. rel. Schindler v. Schiavo*, 403 F.3d 1289, 1293 n.2 (11th Cir. 2005) (noting that the "Supreme Court has repeatedly held ...

---

[1] "Public accommodation" includes "an inn, hotel, motel or other place of lodging." 42 U.S.C. § 12181(7)(A).

that federal money does not transform private persons or entities into state actors").

Plaintiff has not established that he was discriminated against in a place of public accommodation, as would be required to state a claim under Title III of the ADA. In any case, Title III of the ADA does not provide for a private cause of action for damages. *See* 42 U.S.C. § 12188(a)(1) (same remedies available under Title III of ADA as under Title II of Civil Rights Act of 1964); *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.").

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" is defined in the ADA as "a state or local government," or "department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(a) and (b). In this case, plaintiff has not alleged that he was denied any services, because of his disability, by the City of New York or other government entity.

The court has also considered whether plaintiff's claims of discrimination could arise under the Fair Housing Act ("FHA") or the Fair Housing Amendments Act of 1988 ("FHAA"), which are codified at 42 U.S.C. § 3601, *et seq.* These laws forbid discrimination in housing on the basis of race, color, religion, sex, familial status, national origin and disability. *See* 42 U.S.C. § 3604. The provisions of the FHA apply to private landlords, as well as to providers of public housing. Section 3604(f) of the FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... that buyer or renter," or "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." 42 U.S.C. § 3604(f)(1)-(2). Disability Discrimination prohibited by the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). In this case, plaintiff's vague allegations of discrimination and prejudice are not linked to any defendant and do not suggest that he was denied housing or

services on the basis of his race or disability or another characteristic protected by the FHA.

D. Leave to Amend

All of plaintiff's claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of the court's duty to liberally construe *pro se* complaints, however, plaintiff is given 30 days leave to file an amended complaint. To the extent that plaintiff wishes to proceed pursuant to § 1983, he must name individual defendants who are state actors and who may be responsible for the alleged deprivation of plaintiff's rights. Plaintiff must describe what each defendant did or did not do in violation of his rights, and when the alleged violations occurred. Should plaintiff wish to name the City of New York, he must show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

Should plaintiff wish to proceed under the ADA, he must establish that he suffers from a disability as defined by the Act and that he was excluded from participation in or was denied the benefits of the services, programs, or activities of a public entity. Likewise, if he wishes to assert claims under the FHA, he must identify his race or other characteristic, such as disability status, and plausibly allege facts indicating that

17

he was discriminated against in housing due to that characteristic. Any amended complaint must be captioned "Amended Complaint" and bear the same docket number as this order.

## CONCLUSION

For the reasons set forth above, the complaint is dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). If plaintiff fails to replead within 30 days as directed by this Order, judgment dismissing the complaint shall enter. Because plaintiff's IFP application was previously granted by Judge McMahon of the Southern District of New York, this court terminates plaintiff's IFP application as moot.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to serve *pro se* plaintiff with a copy of this Memorandum and Order, and to note service on the docket.

SO ORDERED.

/s/
**KIYO A. MATSUMOTO**
United States District Judge

Dated: March 3, 2020
Brooklyn, New York